Rosa, Demandante y Apelante, *v.* Díaz et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre resolución de obligación.

No. 2778.—Resuelto en abril 2, 1923.

*Disponer* DE LA COSA DADA EN GARANTÍA—INTERPRETACIÓN DE LA PALABRA ''DISPONER''—HIPOTECAR NO ES ''DISPONER''.—El dueño de una finca que mediante contrato constante en documento privado se había comprometido con su acreedor a *no disponer* de la misma sin antes haber solventado el crédito, no viola su contrato al hipotecar la finca a otra persona, pues el significado general, usual y gramatical de la palabra ''disponer'' envuelve la idea de traspasar a otra persona el dominio y control de alguna cosa, desprendiéndose de ella por cualquiera de los medios que definitivamente la sacan de nuestro poder, como la donación, venta, renuncia, enajenación; y el que hipoteca una cosa no se desprende definitivamente del dominio que tiene sobre ella.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. L. Mercader.*

Abogados de los apelados: *Sres. Largé & Zeno.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

En documento privado de 8 de mayo de 1921, los hermanos José y Ramón Díaz Agueda reconocieron deber a Lucas Rosa Ruiz la cantidad de $2,395.22 y se comprometieron a pagarla, sin interés, en el término de diez años, y por anualidades, según pudieran, aunque estaban dispuestos a satisfacerla antes de ese tiempo. En la cláusula tercera de ese documento consta la siguiente estipulación:

''Para el cumplimiento de esta obligación afectamos nuestras personas y bienes habidos y por haber y renunciamos a todos los derechos y acciones que las leyes nos conceden, comprometiéndonos a

no disponer de nuestra finca sin antes haber solventado dicha obligación.''

El 18 de octubre del mismo año los hermanos Díaz Agueda hipotecaron una finca de su propiedad de 41 a 45 cuerdas de terreno a favor de tercera persona para garantía de un préstamo de $400 y sus intereses del 1 por ciento mensual por término de dos años y con la condición de que si dejaban de pagar dos trimestres consecutivos de intereses se entendería vencida toda la obligación; y en 4 de enero de 1922 Lucas Rosa Ruiz demandó judicialmente a los hermanos Díaz Agueda para que pagasen toda su deuda de $2,395.22 fundándose en que la constitución de ese hipoteca, sin su consentimiento, es una violación de su contrato con él. Se opusieron los demandados a esa reclamación y celebrado el juicio se dictó sentencia declarando sin lugar la demanda, contra cuyo fallo interpuso el demandante este recurso de apelación.

Toda la controversia en este pleito gira sobre el significado y alcance de la palabra ''disponer'' usada en la cláusula tercera del contrato entre las partes, sosteniendo el apelante que al hipotecar su finca los demandados, sin su consentimiento, dispusieron de ella en contravención del contrato y que por esto están obligados a pagar ahora toda su deuda.

Según el Diccionario de la Academia Española la palabra ''disponer'' significa: ''Obrar libremente en el destino o enajenación de sus bienes, por donación, venta, renuncia, etc.'' En el Diccionario de Webster se define así la palabra *dispose of*: ''Traspasar al control de otra persona, como por ejemplo, vendiendo; enajenar, separarse de; renunciar, negociar.'' Idéntico significado encontramos en *The Century Dictionary and Cyclopeda,* vol. II, pág. 1679.

Estas definiciones nos demuestran que el significado general, usual y gramatical de tal palabra envuelve la idea de traspasar a otra persona el dominio y control de alguna

cosa, despréndiéndose de ella por cualquiera de los medios que definitivamente la sacan de nuestro poder, como la donación, venta, renuncia, enajenación; significado que indudablemente tuvieron en cuenta los contratantes porque es de todos conocido.

Pero si atendieron las partes al significado legal de esa palabra, también hemos de llegar a la conclusión de que tiene igual sentido, pues el Sr. Falcón, catedrático de derecho Civil de la Universidad de Barcelona (España) en sus Comentarios al Código Civil, tomo 2, pág. 123, Ed. 4, dice lo siguiente: "Dos atribuciones fundamentales, como acabamos de ver, constituyen el fondo del derecho de .propiedad; la facultad de gozar y la facultad de disponer. Los romanos expresaban estas dos ideas con las palabras *'utere et abutere.'* Nuestros códigos traducen estas dos palabras por las de gozar y disponer: gozar o usar cuando se aprovecha uno por sí mismo de la utilidad de las cosas: disponer o abusar, cuando se cede a otro en todo o en parte el dominio. Las dos facultades reunidas constituyen el dominio propiamente dicho." En *Bouvier's Law Dictionary.* vol. I. pág. 888, se define: "Disponer: enajenar o disponer de la propiedad de una cosa, como por testamento." En *Words & Phrases Judicially Defined,* vol. 3, pág. 2114, se define disponer como "enajenar, traspaso efectivo." También encontramos igual significado en 18 C. J. 1279. En 2 C. J. 1036 se dice que ordinariamente una hipoteca u otro gravamen sobre la tierra, no es una enajenación, técnicamente hablando, porque aunque finalmente puede resultar en una enajenación, no es por sí misma una completa y absoluta transferencia del título. Y en el caso de *Bryan* v. *Traders' Insurance Co. of Chicago,* 145 *Mass.* 389 a 392, en el cual fué hipotecada una casa que estaba asegurada con la condición de que la póliza de seguro sería nula si la propiedad era vendida, se declaró que la hipoteca no anulaba la póliza porque una hipoteca no es una venta.

Es cierto que según el artículo 354 del Código Civil la propiedad concede el derecho de gozar y disponer de la cosa y que uno de los modos de disponer es gravando la finca con hipoteca o cediéndola en arrendamiento, pero esto no quiere decir que por la hipoteca o el arrendamiento el dueño haya dispuesto de su propiedad en el sentido que la palabra disponer tiene, porque continúa siendo dueño de ella.

Por todo lo expuesto llegamos a la conclusión de que al hipotecar su finca los demandados no violaron el contrato en que se comprometieron a no disponer de ella mientras no hubieran pagado su deuda con la demandante y por tanto la sentencia que declaró sin lugar la demanda debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf y Hutchison.

El Juez Presidente Sr. del Toro y el Juez Asociado Sr. Franco Soto, disintieron.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO CON LA CUAL ESTÁ CONFORME EL JUEZ ASOCIADO SR. FRANCO SOTO.

Se solicita en este caso la resolución de cierta obligación contractual. La parte demandada se opuso y la corte de distrito sostuvo su oposición. Después de un estudio cuidadoso del asunto, opino que la corte de distrito erró, y en tal virtud que su sentencia debe ser revocada dictándose otra declarando la demanda con lugar.

Claramente resulta de los autos que ambas partes, demandante y demandados, otorgaron un contrato que, copiado a la letra, es como sigue:

"En el pueblo de Hatillo, a los ocho días del mes de mayo de 1921.—Comparecen: De una parte Don Lucas Rosa Ruiz, de estado soltero y mayor de edad, agricultor propietario y vecino de Hatillo, barrio de Capez y de la otra parte los hermanos José y Ramón Díaz Agueda, también mayores de edad, de estado solteros y vecinos de Hatillo, barrio de Naranjito. Aseguramos hallarnos en

la capacidad legal necesaria para llevar a efecto el siguiente convenio extrajudicial, el que queremos tenga la fuerza y validez como si judicial fuera; y llevamos a efecto el siguiente convenio con arreglo a las siguientes estipulaciones: Primera. Los hermanos Díaz Agueda son en deber a don Lucas Rosa Ruiz, o a su orden la cantidad de dos mil trescientos noventa y cinco dollars veinte y dos centavos ($2,395.22) cuya cantidad procede por liquidación de cuentas que ha practicado entre el señor Rosa y nuestro padrasto Froilán López, cuya cantidad ésta nos obligamos a pagarle al señor Rosa en el término de diez años sin interés de ninguna especie.—Segunda: Esta cantidad será satisfecha al señor Rosa por anualidades, según podamos de acuerdo con la primer cláusula de este convenio, esto es, aunque el término de este convenio es de diez años, si lo podemos hacer en menos tiempo estamos dispuestos a hacerlo así.—Tercera: Para el cumplimiento de esta obligación afectamos nuestras personas y bienes habidos y por haber y renunciamos a todos los derechos y acciones que las leyes nos conceden, comprometiéndonos a no disponer de nuestra finca sin antes haber solventado dicha obligación.—Cuarta: Caso que en el tiempo fijado no hayamos satisfecho toda la cantidad antes dicha, el señor Rosa está en la obligación de conceder alguna prórroga.—Don Lucas Rosa acepta el presente contrato en todas sus partes por ajustarse a lo convenido.—Para resguardo y uso legal de ambas partes firman el presente por duplicado uno para cada parte ante los testigos que al final suscriben, en la fecha indicada al principio de este documento.—(Firmados) José Díaz.—Ramón Díaz.—Lucas Rosa.—José Padilla.—José Delgado Toledo.''

El 18 de octubre de 1921, o sea algunos meses después de otorgado el contrato que antecede, los demandados sin consentimiento del demandante, hipotecaron la finca a que se refiere el contrato y de la cual se obligaron a no disponer, para garantizar cierto préstamo de cuatrocientos dólares que les hizo Inocencia Peraza y su esposo Francisco García. El préstamo debía pagarse en dos años, abonándose intereses por trimestres, con la condición de que si no se pagaban dos trimestres consecutivos, se podría exigir el cumplimiento inmediato de la obligación.

Al enterarse el demandante de la constitución de la hi-

poteca de que se ha hecho mérito, requirió a los demandados para que en alguna otra forma le garantizaran la deuda que con él tenían contraída. Los demandados, que no poseen más fincas que aquella que se obligaron a no disponer y que hipotecaron luego, se negaron a otorgar la nueva garantía pedida por el demandante y éste entonces inició el presente litigio solicitando una sentencia que declarara resuelta la obligación contenida en el contrato de 8 de mayo de 1921 y rescindido el convenio, y condenara a los demandados a pagar al demandante la suma de $2,395.22 y las costas.

La primera cuestión que debe considerarse y resolverse, a mi juicio, es la siguiente:

¿Violaron los demandados el contrato? Veámoslo.

Ellos se comprometieron a pagar al demandante la suma de $2,395.22 dentro del término de diez años, sin interés, haciéndole pagos parciales por anualidades, y para el cumplimiento de su obligación se comprometieron *"a no disponer de nuestra finca sin antes haber solventado dicha obligación."*

¿Dispusieron de su finca? Es un hecho que la hipotecaron. ¿Constituye esto una disposición, en primer término, y en segundo una disposición en violación del contrato?

"La propiedad," dice el párrafo segundo del artículo 355 del Código Civil revisado, "concede el derecho de *gozar* y *disponer* de las cosas sin más limitaciones que las establecidas por las leyes." Y el artículo 348 del Código Civil antiguo, expresa: "La propiedad es el derecho de *gozar* y *disponer* de una cosa, sin más limitaciones que las establecidas en las leyes." Las itálicas son nuestras.

Comentando Scaevola el "derecho de disponer" consignado en el artículo 348, *supra,* dice: "Refiérese el Código al usar esta palabra a la facultad que tiene el propietario de enajenar la cosa, *de gravarla,* transformarla, destruirla, etc." Las itálicas son nuestras.

Sánchez Román al tratar del contenido del derecho de do-

minio, se refiere a la definición romana del mismo, a saber: *Jus utendi, fruendi, abutendi, disponendi, et vindicandi,* y al explicar el *jus disponendi,* dice:

"Por *jus disponendi,* entendieron los romanos el poder de disposición que compete al dueño sobre las cosas objeto de su dominio, para enajenarlas, gravarlas, transformarlas, etc."

Y luego, tratando de la *libre disposición,* expresa:

"Por razón de este concepto puede el dueño enajenar sus cosas por cualquier título oneroso o lucrativo, por acto *inter vivos* o *mortis causa,* pura, condicionalmente o a término. * * * Puede también *gravarlas* y *limitar* su poder, lo que constituye una especie de enajenación parcial, sujetándolas a las responsabilidades de otros derechos de hipotecas, prenda, censo, servidumbre, etc. * * * "

Véase: "Estudio de Derecho Civil" por Felipe Sánchez Román, tomo 3, pág. 91 y siguientes:

Escriche en su Diccionario razonado de Legislación y Jurisprudencia, fijando el alcance de la palabra *enajenación,* menos amplia que disposición, dice:

"Enajenación. El acto por el cual se transfiere a otro la propiedad de alguna cosa a título lucrativo, como la donación; o a título oneroso, como la venta o permuta.—Esta palabra, tomada en una significación más extensa, comprende también la enfitéusis, la prenda, la hipoteca, y aún la constitución de servidumbre sobre un fondo. Síguese de aquí que el que no puede enajenar una cosa, no la puede tampoco obligar, ni sujetar con hipoteca, ni imponerle servidumbre. 'Aquel a quien es defendido de non enajenar la cosa, dice la ley 10, título 33, part. 7, non la puede vender, nin camiar, nin empeñar, nin puede poner servidumbre en ella nin darla a censo a ninguna de aquellas personas a quien es defendido de la enajenar."

De acuerdo con las anteriores citas, puede concluirse que hipotecar es disponer, quedando así contestada en la afirmativa la primera parte de la pregunta formulada. Ahora bien, esto, por sí solo, no es bastante.

¿Constituye la hipoteca contraída por los demandados en este caso una verdadera *disposición en violación del con-*

*trato?*  Es indudable que si el demandante estuvo conforme
en fijar un largo plazo para el pago de la cantidad que re-
conocieron adeudarle los demandados se debió a la garantía
que para él representaba que la finca en cuestión continuara
en poder de los demandados, disfrutándola éstos, gozándola,
cultivándola y vendiendo sus productos, etc., pero sin ena-
jenarla o realizar acto alguno de disposición que hiciera de-
saparecer o disminuir la garantía.

Quizá no en todos los casos pudiera concluirse que una
hipoteca producirá el efecto de disminuir el valor de una
propiedad.  En muchas ocasiones el dueño de una finca,
emprendedor, activo, capaz, contrae un préstamo hipoteca-
rio para invertirlo todo en cultivos, en ganado, en mejo-
ras de la propia finca y el resultado será no una dismi-
nución, sino un aumento en el valor.  Pero por regla gene-
ral al hipotecarse una finca, prescindiendo del empleo del
dinero que con ella se obtenga, pensando en la finca en sí
misma, se considera que dicha finca disminuye de valor por
lo menos en una cantidad igual a la carga' real que sobre ella
se hace pesar a virtud de la hipoteca.

Si bien aquí se trata de un préstamo pequeño, circuns-
tancia que nos ha hecho vacilar en la formación de nuestro
juicio, como el valor de la finca es también relativamente pe-
queño y como la prueba demuestra que los demandados no
tenían ninguna otra propiedad y que requeridos por el de-
mandante para que le garantizaran de algún otro modo la
deuda, se negaron a hacerlo, creemos que la segunda y úl-
tima parte de la pregunta formulada debe también contes-
tarse en la afirmativa.

Habiendo, pues, los demandados dispuesto de la finca en
violación del contrato que celebraron con el demandante,
asiste a éste el derecho que le reconocen los siguientes pre-
ceptos de ley:

"La facultad de resolver las obligaciones se entiende implícita

en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a los artículos 1262 y 1265 y las disposiciones de la Ley Hipotecaria." Art. 1091 del Código Civil.

"Perderá el deudor todo derecho a utilizar el plazo:

"1. Cuando, después de contraída la obligación, resulte insolvente, salvo que garantice la deuda.

"2. Cuando no otorgue al acreedor las garantías a que estuviese comprometido.

"3. Cuando por actos propios hubiese disminuído aquellas garantías después de establecidas, y cuando por caso fortuito desaparecieran, a menos que sean inmediatamente sustituídas por otras nuevas e igualmente seguras." Art. 1096 del propio cuerpo legal.

Perdido por culpa del deudor el derecho a pagar en el plazo convenido, surgió en el acreedor el derecho a reclamar inmediatamente el pago de la deuda. Y ese es el derecho que ejercitó al iniciar este pleito. Los hechos y la ley están, pues, en su favor.